DECISION
{¶ 1} Relator, Smurfit-Stone Container Enterprises, requests a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order *Page 2 
granting the May 18, 2006 motion of respondent Ralph W. Sells for authorization of left knee surgery, and to enter an order denying the motion.
 {¶ 2} This court referred this matter to a magistrate pursuant to Civ. R. 53(C) and Loc. R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny the requested writ. (Attached as Appendix A.) No objections to the magistrate's decision have been filed.
 {¶ 3} Having conducted an independent review of the evidence in this matter, and finding no error of law or other defect on the face of the magistrate's decision, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, the requested writ is denied.
Writ of mandamus denied.
BROWN and KLATT, JJ., concur.
KLINE, J., of the Fourth Appellate District, sitting by assignment in the Tenth Appellate District. *Page 3 
 APPENDIXA MAGISTRATE'S DECISION {¶ 4} In this original action, relator, Smurfit-Stone Container Enterprises ("relator" or "Smurfit"), requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting the May 18, 2006 *Page 4 
motion of respondent Ralph W. Sells ("claimant") for authorization of left knee surgery, and to enter an order denying the motion.
Findings of Fact: {¶ 5} 1. Claimant has three industrial claims involving injuries to his left knee. Two of those claims arose prior to claimant's employment with relator, a self-insured employer under Ohio's workers' compensation laws.
 {¶ 6} 2. On April 23, 1982 and, thereafter, on October 18, 1984, claimant sustained industrial injuries while employed with JB Drilling Inc., a state-fund employer. The 1982 claim (No. 82-7743) and the 1984 claim (No. 84-27983) are both allowed for "sprain left knee and leg."
 {¶ 7} 3. On June 7, 1985, Louis J. Unverferth, M.D., performed left knee surgery which is described in his operative report as "reconstruction of the anterior cruciate ligament," "partial left medial meniscectomy," and "reconstruction medial and posterior medial corner of left knee joint."
 {¶ 8} 4. On July 10, 1986, Dr. Unverferth performed left knee surgery described in his operative report as "open reconstruction medial aspect of the left knee."
 {¶ 9} 5. In 1987, claimant began his employment as a "yard driver" with relator.
 {¶ 10} 6. On July 13, 1993, claimant sustained an industrial injury while employed with relator. The industrial claim (No. 93-361687) is allowed for "left knee tear medial meniscus; loose body and chondromalacia left knee; left knee contusion; aggravation of pre-existing arthritis left knee."
 {¶ 11} 7. On May 23, 1994, Dr. Unverferth performed left knee surgery described in his operative report as "debridement of grade III chondromalasic defect of *Page 5 
the lateral femoral condyle and * * * partial medial meniscectomy, followed by * * * open removal of the two AO screws and washers."
 {¶ 12} 8. On November 6, 1995, Dr. Unverferth performed left knee surgery described in his operative report as "removal of multiple cartilaginous loose bodies and debridement of knee joint."
 {¶ 13} 9. On December 14, 1995, Dr. Unverferth wrote:
 Ralph is still having some problems with his knee. He, of course, has a very arthritic knee. I told him that I think he is going to have to live with the knee the way that it is. We have returned him to work and hopefully he will be able to choose his activity so it is not too difficult for him, but if he returns with symptoms as a result of work, I am afraid that he is going to probably have to become disabled or find a different type of employment.
 {¶ 14} 10. On December 2, 2002, claimant underwent a left knee MRI. The radiologist reported:
 Impression: The ACL tunnel appears somewhat vertically oriented as described with some fluid type signal within the tibial tunnel. Question graft integrity. Clinical correlation. Some increased signal in the medial portion of the posterior horn of the medial meniscus raises question of tear. Suprapatellar bursal effusion. Superficial infrapatellar bur-sitis. Chondromalacia patellae.
 {¶ 15} 11. On February 4, 2003, Dr. Unverferth wrote:
 Mr. Ralph Sells does indeed have a very long complicated history of left knee problems. He initially presented to my office in April of 1995 [sic] and at that time he had an unstable knee which required an anterior cruciate ligament reconstruction in June of 1985. There is no doubt that the surgery was necessitated by the injury. He was in the process of developing an arthritic condition in that knee. He, however, was doing well until he fell on July 13, 1993 and reinjured his knee. That fall did occur at work and did aggravate the pre-existing condition of arthritis and instability in that knee. He had another injury in September of 1995 *Page 6 
and he states that at that time he had fully recovered from the fall of July 13, 1993. Again, this injury aggravated the condition of instability and arthritis that is ongoing and becoming more severe as time goes on.
 He was last evaluated in January of 2002 and at that time the degernative arthritis in the knee had advanced significantly. Therefore, I can state with certainty that it is not only the injury of July 13, 1993 that has caused his condition, it is the whole accumulation of injuries and the surgeries that have taken place since the 80's that have lead to this man's present condition. Eventually[,] he is going to require a total knee replacement. For the time being my suggestion is to do yet one more arthroscopic debridement. I cannot tell you to what extent that one single injury of July 13, 1993 had on the overall condition of his knee, but I can state that it certainly has aggravated it.
 {¶ 16} 12. On January 26, 2006, in an office note, Dr. Unverferth wrote:
 History: Ralph Sells is now 57 years of age. He has been a patient of mine for many, many years. He has an industrial injury to his left knee. He underwent an ACL reconstruction years ago and has unfortunately gone on to develop very significant end[-]stage degenerative arthritis of that knee. He is therefore a candidate now for left total knee arthroplasty. There is nothing else short of this that could be beneficial to him. He is otherwise a healthy individual although he is somewhat overweight.
 Plan: I explained to him the risks and reasonable expectations and I do believe that he would like to go forward with that surgery. However, this is an industrial injury and we need to get authorization from the BWC.
 {¶ 17} 13. Also, on January 26, 2006, Dr. Unverferth wrote a letter or report (hereinafter "report") to the Ohio Bureau of Workers' Compensation ("bureau"):
 Ralph Sells was last examined by this surgeon on January 26, 2006. At that time, he was complaining of progressive pain and deformity in his left knee. He has pain at rest, pain at night, and more bad days then good days. He is presently failing nonsurgical management. The diagnosis is that of severe and progressive degenerative arthritis of the knee that is related to an industrial injury that required a surgical procedure years ago. *Page 7 
His x-rays taken in the office on January the 26th 2006, reveal very severe global arthritis for which there is no other solution other than a total knee arthroplasty.
 I have explained to him the risks and reasonable expectations and he wishes to go forward with that surgical procedure. Therefore, this is a request for authorization to go forward with a total knee arthroplasty on Mr. Ralph Sells.
 {¶ 18} 14. On March 21, 2006, Dr. Unverferth completed a C-9 requesting authorization for a "left total knee arthroplasty." On the C-9, Dr. Unverferth cited his January 26, 2006 office note.
 {¶ 19} 15. Relator denied the C-9.
 {¶ 20} 16. On May 18, 2006, claimant moved for authorization of the surgery citing Dr. Unverferth's C-9 and his January 26, 2006 report to the bureau.
 {¶ 21} 17. On June 15, 2006, at relator's request, Walter H. Hauser, M.D., reviewed medical records and issued a report:
 It's my opinion that any aggravation of his pre-existing arthritis should be considered to have been a temporary situation. The amount of progression of his arthritis from the period of time of 12/02/02 until the more recent films of 01/26/06 has been what one would expect as part of the natural aging process in this individual. It's my opinion that the surgery that has been requested to do a total-knee replacement arthroplasty should be considered part of his pre-existing degenerative arthritis. The surgery would have been necessary in time, whether or not, he sustained any injury on 07/13/93.
 To be sure my opinion is clear, it is my impression that he has fairly extensive three-compartment degenerative arthritis at this time. It's also my opinion that while his claim has been allowed for the condition of aggravation of pre-existing arthritis, that condition should have been temporary, and the current findings on his MRI, which was done on 01/26/06, are a result of the natural aging process in this man, and that the surgery that has been requested by Dr. Unverferth is *Page 8 
being done for his pre-existing condition, rather than the allowed aggravation of his degenerative arthritis.
 {¶ 22} 18. Following a June 27, 2006 hearing, a district hearing officer ("DHO") issued an order denying claimant's motion. The DHO's order explains:
 District Hearing Officer bases this decision on the 06/15/2006 medical report from Dr. Hauser that supports injured worker's requested surgery is related to his past unrelated left knee problems suffered prior to the 07/13/1993 date of injury, the fact that Dr. Unverferth's 01/26/2006 letter supports that the above requested surgery is related to complications stemming from injured worker's prior left knee ACL reconstruction surgery and the fact that injured worker's prior ACL reconstruction surgical report in file notes that the procedure occurred on 06/07/1985 prior to the date of injury.
 {¶ 23} 19. Claimant administratively appealed the DHO's order of June 27, 2006.
 {¶ 24} 20. Following an August 8, 2006 hearing, a staff hearing officer ("SHO") issued an order that vacates the DHO's order and grants claimant's motion. The SHO's order explains:
 It is the finding of the Staff Hearing Officer that the request for surgery and related medical treatment by Dr. Louis Unverf[e]rth (orthopedic surgeon) is granted to be paid per BWC medical guidelines. It is the finding that this request for surgery is directly related to the allowed conditions in this industrial claim and is reasonably necessary at the present time.
 The basis for this decision is the narrative orthopedic report from Dr. Louis Unverf[e]rth dated 01/26/2006, Dr. Unverf[e]rth's office note of 01/26/2006 and the C-9 report from Dr. Unverf[e]rth dated 03/21/2006. It is the finding that the surgery request on the C-9 report dated 03/21/2006 is granted including auxiliary treatment related to the left knee surgery.
 {¶ 25} 21. On September 15, 2006, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of August 8, 2006. *Page 9 
 {¶ 26} 22. On November 1, 2006, the three-member commission, one member dissenting, denied relator's request for reconsideration.
 {¶ 27} 23. On August 9, 2007, relator, Smurfit-Stone Container Enterprises, filed this mandamus action.
Conclusions of Law: {¶ 28} Two issues are presented: (1) whether the relied upon evidence from Dr. Unverferth provides some evidence supporting the commission's determination that the requested surgery is related to the 1993 industrial injury, and (2) whether the commission abused its discretion by failing to address Dr. Hauser's opinion that the aggravation of preexisting arthritis should have been temporary and, thus, could not be related to the need for a total left knee arthroplasty.
 {¶ 29} The magistrate finds: (1) the relied upon evidence from Dr. Unverferth provides some evidence supporting the commission's determination that the requested surgery is related to the 1993 industrial injury, and (2) the commission did not abuse its discretion by failing to address Dr. Hauser's opinion that the aggravation of preexisting arthritis should have been temporary.
 {¶ 30} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 31} In State ex rel. Miller v. Indus. Comm. (1994),71 Ohio St.3d 229, 232, the court articulated a three-pronged test for the authorization of medical services: (1) are the medical services reasonably related to the industrial injury, that is the allowed conditions? (2) are the services reasonably necessary for treatment of the industrial injury? and (3) is the cost of such service medically reasonable? *Page 10 
 {¶ 32} Here, it is the first prong of the Miller test that guides the analysis.
 {¶ 33} Turning to the first issue, relator contends that Dr. Unverferth's reference to the ACL reconstruction in his January 26, 2006 office note must be viewed as an indication that the need for a left total knee arthroplasty is not related to the 1993 industrial claim since the ACL reconstruction was performed in 1985 prior to the 1993 injury. Given relator's view that the reference to the ACL reconstruction indicates a lack of causal relationship to the 1993 injury, relator concludes that the January 26, 2006 office note cannot constitute some evidence supporting the surgery request. The magistrate disagrees.
 {¶ 34} Analysis begins with a careful reading of Dr. Unverferth's January 26, 2006 office note. While Dr. Unverferth does indeed reference the ACL reconstruction, he goes on to say that claimant "has unfortunately gone on to develop very significant end[-]stage degenerative arthritis," a clear reference to an allowed condition of the 1993 claim. Parenthetically, it can be noted that only the 1993 claim is allowed for an arthritis condition, albeit an aggravation of preexisting arthritis.
 {¶ 35} Following his statement that claimant has very significant end-stage degenerative arthritis, Dr. Unverferth concludes that claimant is a candidate for left total knee arthroplasty. Clearly, Dr. Unverferth attributes the arthritis to the need for an arthroplasty.
 {¶ 36} Given the above analysis, it was well within the commission's discretion, as the interpreter of the evidence, to conclude that the January 26, 2006 office note is evidence of a causal relationship between an allowed condition of the 1993 claim and *Page 11 
the requested surgery. The reference to the ACL reconstruction that occurred prior to the 1993 injury does not necessarily detract from that conclusion.
 {¶ 37} Dr. Unverferth's January 26, 2006 report to the bureau is fully consistent with the above analysis. In that report, Dr. Unverferth does not reference the ACL reconstruction, thus suggesting that the reference in his office note is not significant. He does state: "The diagnosis is that of severe and progressive degenerative arthritis of the knee that is related to an industrial injury that required a surgical procedure years ago."
 {¶ 38} Relator argues that Dr. Unverferth's reference to an "industrial injury that required a surgical procedure years ago," must be viewed as a reference to the ACL reconstruction. The magistrate disagrees. The record indicates that Dr. Unverferth performed left knee surgeries in May 1994 and November 1995, following the 1993 industrial injury. As of January 26, 2006, those two surgeries had been performed over ten years ago. Thus, Dr. Unverferth's reference to a "surgical procedure years ago" need not be viewed by the commission, or by this court, as a reference to the 1985 ACL reconstruction. It was well within the commission's discretion to view Dr. Unverferth's reference to a "surgical procedure years ago" as a reference to surgery in the 1993 claim.
 {¶ 39} Given the above analysis, we do not need to know whether the handwritten claim number contained on the January 26, 2006 office note and report was affixed by someone other than Dr. Unverferth after January 26, 2006.
 {¶ 40} Citing State ex rel. Eberhardt v. Flxible Corp. (1994),70 Ohio St.3d 649, 657, relator argues that Dr. Unverferth's C-9 contradicts his office note and report dated January 26, 2006. On that basis, relator concludes that the evidence is equivocal and *Page 12 
cannot constitute evidence to support the commission's authorization of surgery. The magistrate disagrees.
 {¶ 41} Equivocal medical opinions are not evidence. Id. Equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement. Id.
 {¶ 42} Relator concedes that the C-9 itself supports a causal relationship because it lists the claim number for the 1993 industrial injury. However, relator argues that the C-9 presents an equivocation because allegedly it is inconsistent with the January 26, 2006 office note and report which relator argues do not relate the 1993 claim to the surgery request. Actually, this argument must fail for the reasons already explained above. That is, because the January 26, 2006 office note and report do support a causal relationship between the 1993 industrial injury and the surgery request, they are not inconsistent with the C-9. In short, there is no equivocation.
 {¶ 43} As previously noted, the second issue is whether the commission abused its discretion by failing to address an issue allegedly raised by Dr. Hauser when he opined that the allowed condition, aggravation of preexisting arthritis, "should have been temporary."
 {¶ 44} In State ex rel. Peabody Coal Co. v. Indus. Comm. (1993),66 Ohio St.3d 639, during the administrative proceedings before the commission, the claimant's entitlement to TTD compensation was challenged on grounds that the claimant had returned to sustained gainful employment and that he had reached maximum medical improvement. However, none of the orders issued addressed those matters. The *Page 13 Peabody court issued a writ of mandamus returning the cause to the commission to address those matters.
 {¶ 45} Citing Peabody, relator claims that the commission failed to address a critical issue and thus this court must issue a writ of mandamus ordering the commission to address the issue. The magistrate disagrees.
 {¶ 46} In State ex rel. Lovell v. Indus. Comm. (1996),74 Ohio St.3d 250, 252, the court noted that State ex rel. Mitchell v. Robbins Myers, Inc. (1983), 6 Ohio St.3d 481, directed the commission to cite in its orders the evidence on which it relied to reach its decision. TheLovell court further noted:
 * * * Reiterating the concept of reliance, State ex rel. DeMint v. Indus. Comm. (1990), 49 Ohio St.3d 19, 20, 550 N.E.2d 174, 176, held:
 "Mitchell mandates citation of only that evidence relied on. It does not require enumeration of all evidence considered." (Emphasis original.)
 {¶ 47} In State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203, the court had occasion to apply the Mitchell rule to a decision of the commission adjudicating a permanent total disability application. The syllabus of Noll states:
 In any order of the Industrial Commission granting or denying benefits to a claimant, the commission must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision.
 {¶ 48} In State ex rel. Bell v. Indus. Comm. (1995),72 Ohio St.3d 575, 577, the court held that neither Mitchell nor Noll require the commission to set forth reasons for finding one report more persuasive than another. *Page 14 
 {¶ 49} Here, the commission cited to the evidence upon which it relied. It did not explain why it did not find Dr. Hauser's report persuasive. It was not required to do so. Bell.
 {¶ 50} It must be remembered that Dr. Hauser's ultimate opinion was that the requested surgery is not related to an allowed condition of the claim. In reaching his ultimate opinion, Dr. Hauser offered a supportive opinion that the aggravation of preexisting arthritis should have been temporary. Clearly, the supportive opinion does not create a critical issue regarding the temporariness of the allowed condition that the commission was required to address in its order. Unlike thePeabody case, relator did not move the commission for a determination of maximum medical improvement with respect to the allowed condition. Thus, the Peabody case is inapposite.
 {¶ 51} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus. *Page 1